**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PETRA BUSCHMEIER,                )
                                 )
                  Plaintiff,     )
                                 )
        v.                       )          02: 03-mc-00506
                                 )
G&G INVESTMENTS, INC.,           )
                                 )
                  Defendant.     )

**MEMORANDUM OPINION AND ORDER OF COURT**

Before the Court are the following:

- JUDGMENT CREDITOR PETRA BUSCHMEIER'S EMERGENCY MOTION FOR OMNIBUS RELIEF*(Document No. 60)*;

- RESPONSE IN OPPOSITION TO JUDGMENT CREDITOR PETRA BUSCHMEIER'S EMERGENCY MOTION FOR OMNIBUS RELIEF filed by Defendant G&G Investments, Inc. *(Document No. 61)*; and

- JUDGMENT CREDITOR PETRA BUSCHMEIER'S REPLY TO RESPONSE IN OPPOSITION OF THE JUDGMENT DEBTOR TO HER EMERGENCY MOTION FOR OMNIBUS  RELIEF *(Document No. 62)*.

After a thorough review of the motion, response, and reply, as well as a review of the discovery disputes between these parties, the Court will grant in part and deny in part the instant Emergency Motion for Omnibus Relief.

**Chronology of Discovery Disputes**

A.      Discovery Propounded to the Six G&G-Related Entities

On October 17, 2003, Judgment Creditor Petra Buschmeier ("Buschmeier") served identical document production subpoenas pursuant  Federal Rule of Civil Procedure 45 upon the following six entities, all of which are allegedly related to the Judgment Debtor, G&G

Investments, Inc. ("G&G Investments), *to wit*:  Executive Warehouse, Inc.; Today's Express,

Inc.; Ghaznavi Enterprises, Inc.; Ghaznavi Investments, Inc.; Glenshaw Glass Company, Inc.;

and John J. Ghaznavi Foundation, Inc. (hereinafter referred to as "The Six G&G-Related

Entities").  The subpoenas sought, *inter alia,* "[a]ll documents that constitute evidence, relate,

or refer to all business and legal dealings, Communications (sic), and correspondence from any

kind from January 1, 1988 to the present between" each of The Six G&G-Related Entities and

twenty-one other entities.[1]

On October 28, 2003, each of The Six G&G-Related Entities served Responses and

Objections to the Subpoenas.  The Six G&G-Related Entities are represented by the same

counsel and law firm:  David E. Tungate, Esquire, of Eckert, Seamans, Cherin & Mellott, LLC.

The Six G&G-Related Entities each objected to the production of all documents other than

those related to dealings with G&G Investments, Inc., on the basis that such request(s) was

"overly broad,  unduly burdensome, intended to annoy and/or harrass . . ., and not reasonably

calculated to lead to the discovery of admissible evidence."  However, subject to the foregoing

objection, The Six G&G-Related Entities agreed to produce documents relating to their dealing

with G&G Investments, Inc. from the time period January 1, 2000 to the present.

---

[1]     Specifically, Request No. 1 requested all documents between the related-entity and the following:  "John J. Ghaznavi; all members and/or relatives of the Ghaznavi family including but not limited to Amir Ghaznavi; Patrick T. Connelly; Kent May; G&G Investments, Inc.; all affiliates, partners, and/or investors in, with, and/or of G&G Investments, Inc.; G&G Investment Limited Partnership; Ghaznavi Enterprises, Inc.; Ghaznavi Investments, Inc.; Glenshaw Glass Company; Glenshaw Holdings, Inc.; Delta Property Management; Ghaznavi Family Trust; Anchor Glass Container Corporation; Consumers Packaging, Inc.; Hillsboro Glass Company; I.M.T.E.C. Enterprises, Inc.; Riding Trail Associates, Inc.; GGC,LLC; GGC, Inc.; Ghaznavi Canada, Inc.; Today's Express, Inc.; and John J. Ghaznavi Foundation, Inc."  *See* Request No. 1.

2

As of January 14, 2004, The Six G&G-Related Entities had not produced the requested documents, although the Subpoenas directed that production of all responsive documents occur on November 3, 2003.  By letter dated January 14, 2004, Frederick B. Goldsmith, counsel for Buschmeier, forwarded to David E. Tungate, counsel for The Six G&G-Related Entities, a request for the production of the limited documents The Six G&G-Related Entities had agreed to produce in their Responses and Objections.  The January 14, 2004 correspondence also, *inter alia,* (i) challenged the "overly broad" objection made to the document requests and (ii) asked counsel to withdraw its objections and provide responsive documentation by January 26, 2004.

On January 19, 2004, attorney Gary A. Butler of Eckert, Seamans, Cherin & Mellott telephoned counsel for Buschmeier to advise that "he had been assigned the task of responding to the Subpoenas, that it appeared the documents these entities had agreed to produce had not yet been produced, that it appeared to him that additional documents that these entities had objected to producing should be made available for production" and that he would call back on January 22, 2004 to discuss further details.  See *Mot.* at 4 (Document No. 40)

On January 22, 2004, Attorney Butler informed counsel for Buschmeier that The Six G&G-Related Entities "would only agree to produce whatever type of documents the Judgment Debtor would agreed to produce in response to Buschmeier's Interrogatories and Request for Production directed to G&G Investments."  *Id.*

On February 13, 2004, not having received any documents from The Six G&G Related Entities, counsel for Buschmeier filed a MOTION TO COMPEL FULL AND COMPLETE RESPONSES TO HER SUBPOENAS SERVED UPON EXECUTIVE

3

WAREHOUSE, INC.; TODAY'S EXPRESS, INC.; G&G INVESTMENTS LIMITED

PARTNERSHIP; GHAZNAVI ENTERPRISES, INC.; GHAZNAVI INVESTMENTS, INC.;

GLENSHAW GLASS COMPANY, INC.; AND JOHN J. GHAZNAVI FOUNDATION, INC.

(*Document No. 40*).

By Order of Court dated July 15, 2004, the Court granted the Motion to Compel for

the limited time period from January 1, 1998 to the present.  Moreover, the Court denied and

overruled the objections of The Six G&G-Related Entities, but for their objection to the

timeframe which was limited by the Court to the period from January 1, 1998 to the present.

The Court ordered that The Six G&G-Related Entities "respond in full to Buschmeier's

subpoenas by producing all requested documents on or before **July 30, 2004.**"  Order of Court,

Document No. 45 (emphasis in original).

It appears that as of the date of the instant Motion, the Six G&G-Related Entities had

not complied with the Court's Order of July 15, 2004.

B.      Discovery Propounded to G&G Investments, Inc.

On July 24, 2003, Buschmeier also served upon G&G Investments, Inc., her First Set

of Interrogatories and Requests for Production in Aid of Execution of Judgment.  On August

25, 2003, G&G Investments served its Answers and Objections to the discovery requests

propounded by Buschmeier wherein it stated, *inter alia,* that it "does not have the funds to

satisfy the final judgment in this matter" and objected to the majority of the interrogatories and

requests for production which had been served upon it.  While G&G Investments produced 183

pages of documents, it did not produce a single email, letter or fax.

4

Mr. Patrick Connelly, the Chief Financial Officer for G&G Investments, testified during an October 28, 2003, hearing that there were approximately thirty (30) boxes of records of G&G Investments stored at the company's Allison Park, Pennsylvania office.  On December 18, 2003, counsel for Buschmeier, sought production of these thirty (30) boxes. However, by letter dated December 30, 2003, counsel for G&G Investments declined and stated that "[t]his wholesale request for all G&G business records is overly broad."  Mot. at 3 (Document No. 41).

On January 15, 2004, counsel for G&G Investments offered to supplement its discovery responses, but only as to the wholly-owned subsidiaries of G&G Investments and only for the time period from December 2001 to the present.

On January 23, 2004, counsel for Buschmeier and counsel for G&G Investments had a phone conference at which time it was decided that the discovery disputes could not be resolved.  Accordingly, on February 13, 2004, counsel for Buschmeier filed a MOTION TO COMPEL FULL AND COMPLETE RESPONSES TO PETRA BUSCHMEIER'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION IN AID OF EXECUTION OF JUDGMENT (Document No. 41).

By Order of Court dated July 15, 2004, the Court granted the Motion to Compel for the limited time period from January 1, 1998 to the present.  Moreover, the Court denied and overruled the objections of G&G Investments, but for its objection to the timeframe which the Court limited to January 1, 1998 to the present.  The Court ordered that G&G Investments "supplement in full, in the manner requested by Buschmeier in her Motion to Compel, its responses to Interrogatory Numbers: 1 through 24 and Request for Production Numbers:  1

through 24 on or before **July 30, 2004.**"  Order of Court, Document No. 44 (emphasis in original).

G&G Investments did not comply with the July 15, 2004 Order, but rather filed a MOTION FOR ENTRY OF ORDER OF COURT PERMITTING WITHDRAWAL AS COUNSEL on July 22, 2004 (Document No. 49).  On August 3, 2004, the Court entered an Order in which it denied the motion of G&G Investment without prejudice.  The Court denied the motion to permit counsel to withdraw because a party corporation must be represented by an attorney-at-law in all litigation and matters for adjudication before a court of law and no substitute or alternate counsel on behalf of G&G Investments had been proposed in the motion. *See* Document No. 54.

Thereafter, on August 6, 2004, G&G Investments filed a MOTION FOR RECONSIDERATION OF ORDER, OR, ALTERNATIVELY FOR FEE PETITION (Document No. 55).

G&G Investments argues, without any supporting authority, that it was under no obligation to comply with the Court's Order of July 15, 2004, while its Motion for Reconsideration was pending.  Now, however, G&G Investments claims that it is unable to produce the requested documents because on September 17, 2004, all of the requested documents were destroyed by flood waters.

Buschmeier has filed the instant Emergency Motion for Omnibus Relief in which she requests the following:

6

- that "Mr. John J. Ghaznavi and Mr. Patrick T. Connelly, and its counsel, be ordered to, under oath, show cause why Buschmeier is not entitled to a favorable presumption on her alter ego allegations on the basis of The Judgment Debtor's spoliation of evidence;"

- that "pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure and this Court's inherent power to punish contempts, an Order finding <u>both</u> The Judgment Debtor and its counsel in contempt of Court for their flagrant violation of this Court's direct and plainly-worded July 15, 2003 Order directing production to Buschmeier's counsel by July 30, 2004, of the requested documents and information;"

- that "pursuant to Rules 34 and 37(b)(2) of the Federal Rules of Civil Procedure and this Court's inherent power to punish contempts, an Order allowing Buschmeier's counsel to immediately inspect all premises where the requested documents were stored, and directing The Judgment Creditor, at Mr. Ghaznavi's and Mr. Connelly's sole, personal cost and expense to take measures to retain, preserve, and restore the documents in question;"

- that "Mr. Ghaznavi, Mr. Connelly, and their counsel should also be ordered to immediately and in person, and under oath, report to the Court on what measures they took before the claimed flooding to safeguard the documents, what measures they have taken since to safeguard and preserve and restore the documents, and whether there exist hard and/or electronic copies of any of the documents and other materials which were the subject of this Court's July 15, 2004, Order on Buschmeier's Motion to Compel;" and

- that "[P]ursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure and this Court's inherent power to punish contempts, that she be awarded her attorney's fees for having to prepare and file the Motion to Compel . . . ."

Emergency Motion at 3-4.

**Spoliation of Evidence**

On September 30, 2004, two months after the court-imposed deadline had passed, Stanley J. Parker, Esquire, attorney for G&G Investments, apprised Frederick B. Goldsmith, attorney for Buschmeier, that all of G&G Investments' business records and files located in its offices including the documents which were the subject of the outstanding discovery requests to G&G Investments had been "consumed by the flood waters, contaminated with sewage and rendered unreadable." *See* Exhibit A, Emergency Motion.  All the documents were discarded. In this action, Buschmeier is attempting to establish that G&G Investments, Inc. and other corporations are merely the alter ego of John J. Ghaznavi and/or Patrick Connelly and she seeks a favorable inference on said alter ego allegations on the theory of spoliation of evidence based upon G&G Investment's failure to timely comply with the Court's order of July 15, 2004 to supplement discovery requests.

G&G Investments strenuously argues that an unfavorable spoliation inference should not apply because the documents were accidentally destroyed.  While it is undeniable that on September 17, 2004, the Pittsburgh region suffered a flood which "ravaged Western Pennsylvania," it is also undeniable that had G&G Investments complied with the Court's Order the requested documents would not have been destroyed by the flood.  G&G Investments maintains that the destruction of documents was the result of an unpredictable and unexpected act of God.  However, G&G Investments completely ignores the reality that had the documents been produced in accordance with the Court's Order of July 15, 2004, the September flood would not have affected the documents.

8

G&G Investments has a history of resistance and objections to Plaintiff's discovery efforts throughout this litigation.  A Final Judgment was entered by this Court on July 14, 2003, in favor of Buschmeier and against G&G Investments in an amount totaling more than the equivalent of $57,000,000.  To date, the judgment remains unsatisfied.  Since September, 2003, Buschmeier has continually sought this Court's assistance in her attempts to locate assets and execute on the Judgment.  The September 2004 flood is the latest chapter in the continuing saga of explanations why G&G Investments alleges it is not able to comply with the Court's various Orders and produce the requested documents.  G&G Investments offers no substantive reason for its failure to timely produce the requested documents except to argue that its motion for reconsideration to withdraw as counsel or, alternatively for fee petition, was pending. However, G&G Investments offers no legal authority to support its position that it was under no obligation to comply with the Court's Order while its motion was pending.  Indeed, the Motion for Reconsideration was directed to the Court's denial of counsel's request to withdraw not the Court's Order upon Defendant's to compel discovery production (emphasis added).

Although the Court presumes that G&G Investments did not intentionally destroy the documents or place them in harms way, the fact remains that had G&G Investments complied with the Order of Court dated July 15, 2004, the requested documents would not have been destroyed by the flood of September 17, 2004.   The Court finds and rules that the failure of G&G Investments to comply with the Court's Order of July 15, 2004, is an egregious abuse of discovery which warrants sanctions.

This Court has the inherent authority to enter sanctions for discovery abuses.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).  This inherent power has been

reinforced by Federal Rule of Civil Procedure 37(b)(2), which reads in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery . . . the
> court in which the action is pending may make such orders in regard to the
> failure as are just, and among others the following: ... (A) An order that
> the matters regarding which the order was made or any other designated
> facts shall be taken to be established for the purposes of the action in
> accordance with the claim of the party obtaining the order.

Fed. R. Civ. P. 37(b)(2)(A).

The Court finds and rules that simply assessing monetary damages is not adequate in

this case nor is it practical in view of G&G Investment's questionable financial condition.

Buschmeier is severely hampered in her ability to prove her alter ego allegations and no amount

of monetary damages short of full satisfaction of the judgment could return Buschmeier to the

position in which she may have been had the destruction of documents not occurred.

Accordingly, the Court finds and rules that, under the unique circumstances present in this case,

it is appropriate that John J. Ghaznavi and Patrick T. Connelly, be ordered to show written

cause under oath why Buschmeier is not entitled to a favorable presumption on her alter ego

allegations on the basis of G&G Investment's alleged spoliation of evidence.

**Contempt of Court**

Buschmeier also argues that "[Defendant's] and its counsel's willful failure to

comply with this Court's July 15, 2004, Order granting Buschmeier's Motion to Compel

squarely presents a case of contempt of court."  P's Mot. at 3.

Civil contempt is remedial in nature and is intended to coerce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (citations omitted). The plaintiff must prove defendant's contempt by clear and convincing evidence. *Schauffler v. Local 1291*, 292 F.2d 182, 189 (3d Cir. 1961). Mere preponderance of the evidence is insufficient. *Id*. at 189-90.

To prove contempt, the plaintiff must establish that there existed a valid order of the Court of which the defendant had knowledge and which the defendant disobeyed. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir. 1970) ("Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts.") Because civil contempt is remedial in nature, the defendant may be found guilty even though the violation may have been inadvertent. *Id.*

A defendant may present a valid defense to the contempt motion if it clearly and categorically shows its inability to comply with the Court's order. *Powell v. Ward*, 487 F. Supp. 917, 933 (S.D.N.Y. 1980), *aff'd as modified*, 643 F.2d 924 (2d Cir. 1981) (*citing United States v. Bryan*, 339 U.S. 323, 330-34 (1950)). "However, where the court determines that 'defendants violated their obligations under the decree by failures of diligence, effective control, and steadfast purpose to effectuate the prescribed goals,' contempt findings are in order .' " *Palmigiano v. Garrahy*, 448 F. Supp. 659, 670 (D.R.I. 1978)(internal citations omitted).

While the Court finds that the law firm representing G&G Investments is not without some blame in G&G Investment's failure to comply with the Court's Order, the Court does not find that the actions, or rather more precisely the inactions, of the law firm rise to the level of

11

civil contempt.  Thus, the Court does not find that the law firm of Buchanan Ingersoll, P.C., is guilty of civil contempt.

However, such is not the case with the two officers of G&G Investments, John J. Ghaznavi and Patrick T. Connelly.  Rather, it remains unclear why G&G Investments did not produce the documents in accordance with the Court's Order of July 15, 2004, especially since it appears from G&G Investment's response to Plaintiff's Emergency Motion that "the documents destroyed by the flood were documents that G&G Investments had compiled (and placed in boxes on the floor) to produce in response . . . ."  It is obvious from this response that the requested documents had, at long last, been assembled, compiled and boxed for delivery to Plaintiff's counsel. However, rather than deliver or give notification to Plaintiff's counsel of their availability, the boxes of documents were left unattended on the floor of an office for days, weeks or months until allegedly destroyed by flood waters.  Thus, the Court will order that John J. Ghaznavi and Patrick T. Connelly shall show written cause under oath why they should not be held personally liable for civil contempt.  In addition, both Messrs. Ghaznavi and Connelly shall explain what measures they have taken to preserve and restore the documents whether there exist hard and/or electronic copies of any of the documents and other materials which were the subject of the Court's July 15, 2004 Order and whether it remains possible for any such materials to be recreated or otherwise reconstituted from any other source(s).

The Court also finds that counsel for Buschmeier is entitled to reasonable attorneys' fees from Ghaznavi and Connelly.  *See Schauffler v. United Ass'n. of Journeymen & Apprentices of Plumbing,* 246 F.2d 867, 870 (3d Cir. 1957).  However, such fees shall be limited to the time involved in preparing the Emergency Motion for Omnibus Relief and the

12

time and expense involved in preparing for and attending any future hearing or argument which the Court may schedule following and relating to the filings ordered herein.  Accordingly, counsel for Buschmeier is directed to file a fee petition regarding the subject motion with supporting documentation reflecting (i) a specific itemization of each service or task; (ii) the specific time and charge for each service or task; (iii) the names and status of the party/parties performing each service or task (i.e., attorney, paralegal); (iv) the normal and usual billing rate of the party/parties performing the service or task; and (v) a specific itemization of the costs and expenses incurred.

**Misrepresentations Made to Hillsboro Glass Co. Retirees and Their Spouses**

The Court has been informed that G&G Investments has stopped paying medical and life insurance benefits on behalf of the retirees of Hillsboro Glass Co. and has informed these retirees that ownership of Hillsboro Glass and/or Glenshaw Glass has been transferred "to the Court for further transfer to Mrs. Petra Buschmeier."  Further, G&G Investments allegedly has advised Hillsboro retirees that if they have "any questions regarding the continuation of your medical and life insurance programs, you may contact Mrs. Buschmeier through her attorneys at the following address:

Mrs. Petra Buschmeier
c/o Frederick B. Goldsmith, Esquire
Burns, White & Hickton, LLC
120 Fifth Avenue
Pittsburgh, PA 15222
(412) 394-2596"

P's Emergency Mot., Exhibit B.

13

G&G Investments does not deny these allegations; rather, it brazenly states that "[i]n light of the proceedings in this case, G&G Investments' statements and conduct were (and are) both accurate and justified."  Def's Resp. at 11.

Without doubt, by Order of Court dated July 15, 2004, the Court ordered G&G Investments to endorse the stock certificates of Hillsboro Glass and the other four wholly-owned subsidiaries "<u>in blank</u> and pursuant to Federal Rule of Civil Procedure 67 physically deliver and deposit said certificates with the U.S. District Court Clerk on or before July 23, 2004, <u>with said certificates to be held in escrow for safekeeping</u> by the Clerk in the Collateral Receipts Section of the Court Clerk's office <u>pending further order of the Court regarding final disposition of same</u>."  (Emphasis added)   G&G Investments complied with this Order and surrendered the stock certificates to the District Court Clerk on July 22, 2004.

Despite G&G Investment's argument that Buschmeier is the equitable and/or beneficial owner of Hillsboro Glass and the other corporations, transfer of ownership of these companies has never occurred.  The Order of Court directed the <u>delivery and deposit</u> of the share certificates to be held in "escrow for safekeeping . . . pending further order of Court regarding final disposition of same."; it did not <u>direct</u> the transfer of ownership of the shares to the Court or to Petra Bushmeier.  In fact, the transfer of ownership may never occur.  Neither equitable, beneficial nor legal title to the stock of the subject corporations has passed to Petra Buschmeier and cannot pass to her without an Order "regarding final disposition of same."

The Court finds and rules that the conduct of G&G Investments in misleading the retirees of Hillsboro Glass Co. and summarily cutting off their medical and life insurance benefits is nothing less than unconscionable.  To argue that this Court's Order of November 18,

14

2003 mandates that "G&G Investments (and, implicitly Hillsboro Glass) are **expressly prohibited** from making any payments using Hillsboro Glass' funds for any reason - including medical, insurance and pension benefits" is to misquote and misinterpret said Order entirely out of context.  To conflagrate the Court's Orders and perpetrate such a cruel hoax on the retirees of Hillsboro Glass is reprehensible and warrants sanctions.

Interestingly, G&G Investments took this reprehensible action on or about August 6, 2004, following the stock escrow order of July 15, 2004.  However, G&G Investment relies on the referenced Order of November 18, 2003, for the express prohibition of making any payments from Hillsboro Glass funds for any purpose whatsoever.  To follow G&G Investment's logic it would, therefore, have been making improper payments to the Hillsboro retirees and presumably others for over nine (9) months.

The Court finds and rules that John J. Ghaznavi and Patrick T. Connelly shall show written cause under oath why they should not be held personally liable for civil contempt for the above referenced communications and actions regarding the retirees of Hillsboro Glass Co. and Glenshaw Glass.  Further, John J. Ghaznavi and Patrick T. Connelly shall provide copies of any and all such communications with retirees or others touching upon the issues hereinabove referenced including communications with medical and life insurance carriers and they shall provide a full and complete accounting of all business, financial and insurance activities, assets and insurance coverages of Hillsboro Glass Co. and Glenshaw Glass from November 1, 2003 to the present.

An appropriate Order follows.

McVerry, J.

15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PETRA BUSCHMEIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 03-mc-506 |
| | ) | |
| G&G INVESTMENTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

AND NOW, this 7th day of October, 2005, in accordance with the foregoing

Memorandum Opinion, it is **ORDERED**, **ADJUDGED, AND DECREED** as follows:

1.      On or before **October 27, 2005**, John J. Ghaznavi and Patrick T. Connelly

shall show written cause under oath why Buschmeier is not entitled to a favorable presumption

on her alter ego allegations on the basis of G&G Investment's alleged spoliation of evidence.

Messrs. Ghaznavi and Connelly shall also show cause why they should not be

held personally liable for civil contempt.   In addition, both Messrs. Ghaznavi and Connelly

shall explain what measures they have taken to preserve and restore the documents whether

there exist hard and/or electronic copies of any of the documents and other materials which

were the subject of the Court's July 15, 2004 Order and whether it remains possible for any

such materials to be recreated or otherwise reconstituted from any other source(s).

Additionally, John J. Ghaznavi and Patrick T. Connelly shall show written

cause under oath why they should not be held personally liable for civil contempt for the above

referenced communications and actions regarding the retirees of Hillsboro Glass Co. and

16

Glenshaw Glass.  Further, they shall provide copies of any and all communications with such retirees or others touching upon the issues hereinabove referenced including communications with medical and life insurance carriers and they shall provide a full and complete accounting of all business, financial and insurance activities, assets and insurance coverages of Hillsboro Glass Co. and Glenshaw Glass from November 1, 2003 to the present.

2.      The written notice to Hillsboro Glass retirees of August 6, 2004 regarding medical and life insurance coverage and/or notices to Glenshaw Glass employees is inaccurate, misleading, inappropriately sent and must be corrected with remedial measures to be implemented following compliance with paragraph 1 of this Order.

3.      Counsel for Petra Buschmeier is entitled to reasonable attorneys' fees which shall be limited to the time involved in preparing the instant Emergency Motion for Omnibus Relief and the time and expense involved in having to respond and handle the direct calls of the Hillsboro retirees.  Accordingly, counsel for Petra Buschmeier is directed to file a fee petition with supporting documentation which contains (i) a specific itemization of each service or task; (ii) the specific time and charge for each service or task; (iii) the names and status of the party/parties performing each service or task (i.e., attorney, paralegal); (iv) the normal and usual billing rate of the party/parties performing the service or task; and (v) a specific itemization of the costs and expenses incurred.

BY THE COURT:


s/  Terrence F. McVerry
United States District Judge


17

cc:        Robert J. Ray, Esquire
            Email: rjray@bwhllc.com

            Frederick B. Goldsmith, Esquire
            Email: fgoldsmith@blumlinggusky.com

            William P. Kealey, Esquire/ **FAX:  765/ 742-8175**
            Stuart & Branigin, LLP
            300 Main Street - Suite 800
            P.O. Box 1010
            Lafayette, IN 47902

            Stanley J. Parker, Esquire
            Email: parkersj@bipc.com

            Gregory J. Krock, Esquire
            Email: krockgj@bipc.com

            John D. Waclawski, Jr., Esquire
            Email: jwaclawski@dmclaw.com

            C. Kent May, Esquire
            Eckert, Seamans, Cherin & Mellott
            600 Grant Street
            44th Floor
            Pittsburgh, PA 15219