# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PETRA BUSCHMEIER,        )
)
      Plaintiff / Judgment Creditor,   )
)
          v.          )     02: 03mc00506
)
G&G INVESTMENTS, INC.,     )
)
      Defendant / Judgment Debtor.   )

## MEMORANDUM OPINION AND ORDER OF COURT

January 14, 2009

      The principal issue addressed herein is whether John J. Ghaznavi and Patrick T. Connelly ("Respondents") have violated the Order of Court on July 15, 2004, and should therefore be found in contempt of Court, and, if so, the appropriate sanction(s) for such contempt.[1]

### Background

      The parties, Respondents, counsel, and the Court are familiar with the extensive background facts of this case and, therefore, the Court will not detail the facts again. However, the following is a brief recitation of the procedural facts salient to the issues presently pending before the Court.

---

[1]    Buschmeier also seeks findings of contempt and sanctions against the following entities, collectively referred to as the Subpoenaed Entities: Executive Warehouse, Inc.; Today's Express, Inc.; G&G Investments Limited Partnership; Ghaznavi Enterprises, Inc.; Ghaznavi Investments, Inc.; Glenshaw Glass Company, Inc.; and John J. Ghaznavi Foundation, Inc.

Petra Buschmeier ("Buschmeier") commenced this action against G&G Investments, Inc. ("G&G"), in September 2003 with the filing of a Writ of Execution. Neither John J. Ghaznavi ("Ghaznavi) nor Patrick T. Connelly ("Connelly") were named parties to the execution proceeding; however, throughout the course of this litigation, both Ghaznavi and Connelly have, through counsel, made numerous filings and other responses to the Court.

**Chronology of Discovery Disputes**

Buschmeier alleges that since 2003 G&G has continuously failed, neglected, and/or refused to provide requested and appropriate discovery responses in full and complete fashion.

On July 24, 2003, Buschmeier served upon G&G her First Set of Interrogatories and Requests for Production in Aid of Execution of Judgment in which she sought, *inter alia,* various financial and accounting records, tax returns, information about assets and financial holdings, claims against, claims made by, real estate information, and all supporting documentation of "G&G, its owners, parents, subsidiaries, and/or affiliates," from the period of January 1988 to the present.

On August 24, 2003, G&G served its Answers and Objections to the discovery requests wherein it stated, *inter alia*, that it "does not have the funds to satisfy the final judgment in this matter" and objected to the majority of the interrogatories and requests for production which had been served upon it. G&G initially provided approximately 195 pages of documents which related solely to G&G. Subsequently, additional documents of G&G were produced. However, G&G objected to any attempt by Buschmeier to discover any information and documents which related to its owners, parents, subsidiaries, and/or affiliates:

2

G&G further objects to [these Requests] as being overly broad, irrelevant and improper on the basis that [they] seek[] discovery regarding individuals and entities against which Plaintiff does not have a judgment.

On January 23, 2004, counsel for Buschmeier and counsel for G&G had a phone conference at which time it was decided that the discovery disputes could not be resolved. Accordingly, on February 13, 2004, counsel for Buschmeier filed a Motion to Compel Full and Complete Responses to Petra Buschmeier's First Set of Interrogatories and Requests for Production In Aid of Execution of Judgment against G&G.

By Order of Court dated July 15, 2004, the Court granted the Motion to Compel.[2] Moreover, the Court denied and overruled the objections of G&G, but for its objection to the time frame which the Court limited. The Court ordered that G&G "supplement in full, in the manner requested by Buschmeier in her Motion to Compel, its responses to Interrogatory Numbers 1 through 24 and Request for Production Numbers 1 through 24 on or before **July 30, 2004.**" July 15, 2004, Order of Court, Document No. 44 (emphasis in original).

---

[2] On July 15, 2004, the Court granted Buschmeier's separate Motions to Compel; one was directed to the "Subpoenaed Entities," while the other was directed to G&G. Although Buschmeier requests the Court to hold the Subpoenaed Entities in contempt, the Subpoenaed Entities were not represented by counsel at the contempt hearing, despite having received notice of the hearing and the contentions against them. Accordingly, the primary focus of the contempt hearing was on the failure of G&G to properly respond to the outstanding discovery requests and the individual involvement and responsibility of Connelly and Ghaznavi as officers and directors of G&G. Moreover, by virtue of the bankruptcy filing of G&G and the automatic stay of this case and the inter-relationships between and/or among G&G and the Subpoenaed Entities, the Court lacks jurisdiction at this time to consider Buschmeier's Motion for Sanctions against the Subpoenaed Entities.

On July 22, 2004, Stanley J. Parker, Esquire, and Gregory J. Krock, Esquire, both of the law firm Buchanan Ingersoll filed a Motion for Entry of Order of Court Permitting Withdrawal As Counsel for G&G (*Document No. 49*).  Buchanan Ingersoll informed the Court that due to the non-payment of its fees the firm had not participated in the preparation of supplemental responses.  On August 3, 2004, the Court denied the motion to withdraw without prejudice finding that  "the law requires a corporation to be represented by an attorney-at-law in all litigation and matters for adjudication before a court of law and substitute or alternate counsel on behalf of Defendant has not been proposed in the motion filed by counsel of record . . . ."  Order of Court, Document No. 54.

Unbeknownst to the Court, by correspondence of July 29,  2004, counsel for Buschmeier was advised that over sixty (60) boxes of documents had been assembled by and at the direction of Connelly in response to the Order of Court dated July 15, 2004.  Counsel for Buschmeier was informed that the boxes were stored and available for inspection at an off-site location of G&G at 4790 William Flinn Highway.

On August 6, 2004, G&G filed a Motion for Reconsideration of Order, Or, Alternatively, for Fee Petition in which it argued that it was under no obligation to comply with the Order of Court dated July 15, 2004, while its Motion for Reconsideration was pending.  The Court subsequently denied the Motion for Reconsideration.

On September 30, 2004, Attorney Parker, as counsel for G&G, advised counsel for Buschmeier that "essentially all business records and files which were located at G&G's offices were consumed by the flood waters, contaminated with sewage and rendered unreadable. . . .

and that "essentially all of the G&G documents are no longer available."[3] Mr. Parker also advised that the "non-party documents" stored at 4790 William Flinn Highway were "unaffected by the recent flood and . . . remain available for your review." Apparently, the sixty-plus boxes of documents were not reviewed by counsel for Buschmeier until January and February 2006.

On November 1, 2004, Frederick B. Goldsmith, Esquire, counsel for Buschmeier, filed an Emergency Motion for Omnibus Relief in which she requested, *inter alia,* that Ghaznavi and Connelly, as well as their counsel, be held in contempt for "their flagrant violation of this Court's direct and plainly-worded July 15, 2004 Order directing production to Buschmeier's counsel by July 30, 2004 . . . . " Buschmeier also informed the Court that G&G had stopped paying medical and life insurance benefits on behalf of the retirees of Hillsboro Glass Co. and had incorrectly informed the retirees that ownership of Hillsboro Glass and/or Glenshaw Glass had been transferred "to the Court for further transfer to Mrs. Petra Buschmeier." Further, G&G advised the Hillsboro retirees that if they had "any questions regarding the continuation of [] medical and life insurance programs," they were to contact Buschmeier through her attorney, Frederick B. Goldsmith, whose name, address, and phone number was listed in the Notice. Additionally, on August 25, 2004, Connelly wrote Clark Cameron of the United Steel Workers and again stated that "effective July 22, 2004, the ownership of Hillsboro Glass Company was transferred to Mrs. Petra Buschmeier. . . I am

---

[3]      It is not contested that on September 17, 2004, certain communities in the
        Pittsburgh region suffered from floods which "ravaged Western Pennsylvania."

unaware of any reason why [counsel for Buschmeier] would state to you that his client Petra

Buschmeier is not the owner of Hillsboro Glass Company. . . ."

On March 24, 2005, Attorney Goldsmith withdrew his representation of

Buschmeier. However, she remained represented by attorneys William Kealy and Robert Ray.

On January 11, 2006, attorneys Arnd N. von Waldow and Timothy J. Cornetti, of the Reed

Smith law firm, entered their appearance as counsel for Buschmeier.

By Memorandum Opinion and Order dated October 7, 2005, the Court granted in

part and denied in part Buschmeier's Emergency Motion for Omnibus Relief. The Court held

"that the law firm representing G&G Investments is not without some blame in G&G

Investment's failure to comply with the Court's Order [of July 15, 2004, however,] the Court

does not find that the actions, or rather more precisely the inactions, of the law firm rise to the

level of civil contempt." Memorandum Op. at 11-12. However, with respect to G&G, the

Court stated, in pertinent part, as follows:

> it remains unclear why G&G Investments did not produce the documents
> in accordance with the Court's Order of July 15, 2004, especially since it
> appears from G&G Investment's response to Plaintiff's Emergency
> Motion that the documents destroyed by the flood were documents that
> G&G Investments had compiled (and placed in boxes on the floor) to
> produce in response . . . It is obvious from this response that the requested
> documents had, at long last, been assembled, compiled and boxed for
> delivery to Plaintiff's counsel. However, rather than deliver or give
> notification to Plaintiff's counsel of their availability, the boxes of
> documents were left unattended on the floor of an office for days, weeks or
> months until allegedly destroyed by flood waters.

Memorandum Op. at 12. The Court ordered that Ghaznavi and Connelly should show written

cause under oath why they should not be held personally liable for civil contempt. In addition,

the Court instructed that both Ghaznavi and Connelly should explain what measures they had

taken to preserve and restore the documents, whether hard and/or electronic copies existed of

any of the documents or other materials which were the subject of the Order of Court dated July

15, 2004 , and whether it remained possible for any such materials to be recreated or otherwise

reconstituted from any other source(s).

Further, the Court found that the conduct of G&G in misleading the retirees of

Hillsboro Glass Co. and summarily cutting off their medical and life insurance benefits "was

nothing less than unconscionable." The Court ordered, again, that Ghaznavi and Connelly were

to show written cause why they should not be held personally liable for civil contempt for the

communications and actions regarding the retirees of Hillsboro Glass Co. and Glenshaw Glass.

On October 27, 2004, both Ghaznavi and Connelly filed affidavits in response to the Order.

On October 28, 2005, G&G filed a Notice of Appeal to the United States Court of

Appeals for the Third Circuit with regard to the Order which denied Buchanan Ingersoll

permission to withdraw as counsel for G&G and their request for additional counsel fees.

In January and February of 2006, Buschmeier's recently retained counsel reviewed

the sixty-three (63) boxes of documentation which had been compiled in response to the Order

of Court of July 15, 2004, and stored at 4790 William Flinn Highway since July 29, 2004.

Upon completion of review, counsel for Buschmeier wrote to Stanley J. Parker, Esquire,

counsel for G&G,[4] and informed him that the produced documents failed to completely respond

to the outstanding discovery requests. Counsel for Buschmeier noted that while the produced

documentation contained accounts receivable files with invoices and copies of checks to pay

---

[4] At this time, G&G continued to be represented by Stanley J. Parker, Esquire of
Buchanan Ingersoll as the appeal of the Order denying permission for Buchanan
Ingersoll to withdraw as counsel was pending in the circuit.

such invoices dating back to 1998, there was no information regarding the assets, financial accounts, realty holdings, personal property holdings, and income tax returns of the owners, parents, or affiliates of G&G as had been specifically requested.

After receipt of the correspondence from counsel for Buschmeier, G&G produced limited additional documents, exclusive to G&G. Again, G&G did not produce any documents which pertained to its owners, parents, subsidiaries and/or affiliates.

On June 1, 2006, Buschmeier deposed Judy Miles, a long-time office employee of numerous Ghaznavi-controlled entities, and in December of 2006, Buschmeier deposed the 30(b)(6) Designated Representative of G&G, Patrick T. Connelly. It is noted that although Patrick T. Connelly was the 30(b)(6) Designated Representative of G&G and appeared for deposition in December 2006, he was neither an employee nor an officer or director of G&G at the time, having resigned such positions in September and October 2005.

The depositions apparently confirmed that G&G, its owners, parents, subsidiaries, and affiliates possessed the information and documentation that G&G had been ordered to produce in the July 15, 2004, Order of Court, but G&G had not yet produced the requested information.

On January 25, 2007, the Court of Appeals for the Third Circuit issued an Opinion in which it permitted Buchanan Ingersoll and its attorneys to withdraw from their representation of G&G, but affirmed the District Court's denial of attorney fees. The mandate was issued on February 16, 2007, and the Court, thereafter, granted Buchanan Ingersoll's renewed motion to withdraw on February 21, 2007. G&G has been without counsel in this litigation since

February 21, 2007, when Buchanan Ingersoll was permitted to withdraw from the case per the Circuit Court Opinion.

On July 17, 2007, Buschmeier filed her Complaint in Contempt in which she requests that Ghaznavi and Connelly be found in civil contempt for the failure of G&G to comply with the Order of Court of July 15, 2004, as well as for their conduct related to the Hillsboro Glass retiree communication. Specifically, Buschmeier alleges that Ghaznavi and Connelly should be held in contempt by virtue of their respective positions as officers and directors of G&G. An evidentiary hearing on the Complaint in Contempt was conducted on December 18 and 19, 2007.

On December 11, 2007, G&G filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code, in the United States Bankruptcy Court, Western District of Pennsylvania. *See* Bankruptcy Case Number 07-27811-MBM. By Order of Court on December 19, 2007, the Court ruled that while the automatic stay of section 362 of the Bankruptcy Code was applicable to the underlying collection lawsuit, the evidentiary hearing on the Complaint in Contempt was not stayed insofar as the Complaint in Contempt was against Ghaznavi and Connelly, personally and individually, as officers and directors of G&G and that the automatic stay of section 362 of the Bankruptcy Code did not extend to these individuals in their capacity as corporate officers.

Over a two day period from December 18 - 19, 2007, a contempt hearing was conducted by this Court. All interested participants were represented by counsel who presented and argued the issues skillfully and effectively. At the hearing, the interests of Petra Buschmeier were represented by Timothy J. Cornetti, Esquire, and Justin H. Werner, Esquire of

9

the Reed Smith law firm. Ghaznavi and Connelly were represented by William F. Ward, Esquire, and Hugh F. McGough, Esquire, of Ward McGough, LLC. The following witnesses testified during the contempt hearing: July Miles, Joseph Scherle, Darlene Paulovich, Patrick T. Connelly, Stanley J. Parker, and John J. Ghaznavi.

By Order of Court dated December 20, 2007, counsel were directed to submit proposed Findings of Fact and Conclusions of Law, with a brief in support and/or opposition, on or before February 4, 2008. Thereafter, counsel were permitted to submit Rebuttal Findings, Conclusions, and/or brief(s) in opposition on or before February 20, 2008.

The parties timely filed their proposed Findings of Fact and Conclusions and Rebuttal Findings. Therefore, this matter is ripe for disposition.

**Standard of Review**

In order to find a party in civil contempt, the Court "must find that (i) a valid court order existed, (ii) the [party] had knowledge of the order, and (iii) the [party] disobeyed the order." *John T. ex rel. Paul T. v. Delaware County Intermediate Unit,* 318 F.3d 545, 552 (3d Cir. 2003) (*quoting Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995)). A finding of civil contempt must be supported by "clear and convincing evidence." *Id.* Thus, "[a] contempt citation should not be granted if there is ground to doubt the wrongfulness of the [party]'s conduct." *Harris*, 47 F.3d at 1326. Similarly, the "resolution of ambiguities ought to favor the party charged with contempt." *Id.* However, "[t]he validity of the underlying order is not open to consideration." *Id.*

The burden is on the defendant to "introduce evidence beyond 'a mere assertion of inability,' and to show that it has made 'in good faith all reasonable efforts to comply.' " *Harris,* 47 F.3d at 1324 (citations omitted). However, good faith alone is not a defense to civil contempt and willfulness is not a necessary element. *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994).

The Supreme Court of the United States has long recognized the duty of a corporate officer to comply with a court order directed to the officer's corporation:

> A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt.

*Wilson v. United States,* 221 U.S. 361, 376 (1911). An order from a district court which is directed to a corporation binds a non-litigant corporate officer even where the corporate officer is not specifically named in the order. *See, e.g., Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Electric Service, Co.*, 340 F.3d 373 (6th Cir. 2003); *Chicago Truck Drivers v. Bd. Labor Leasing*, 207 F.3d 500 (8th Cir. 2000). *Cf. Max Seafood Café v. Max Quinteros*, 176 F.3d 669 (3d Cir. 1999) (recognizing the application of the Supreme Court decision in *Wilson* in the corporate context, but declining to bind a non-party who lacked an agency relationship with and authority over the actual party subject to the order of the district court.) A moving party satisfies its *prima facie* case against a corporate officer when it shows that the corporation did not comply with a court order and that the corporate officer had knowledge of the court order. *Electrical Workers,* 340 F.3d at 382.

In the present case, only the third prong of the civil contempt analysis is contested. Respondents do not dispute that the Order of July 15, 2004, is a valid court order or that they had knowledge of the Order. Rather, Respondents contend that at Ghaznavi's direction, without the benefit of counsel who had petitioned to withdraw appearance, Connelly and his staff, complied to the best of their ability under the circumstances at the time with the Court's Order of July 15, 2004, and thus neither Ghaznavi nor Connelly should be held in contempt.

**Findings of Fact**

**A.    Background**

1.    On July 15, 2003, this Court entered Judgment in favor of Petra Buschmeier and against G&G Investments, Inc., in the amount of 57,000,000 Euros. *See* Civil Action No. 02cv00610. The vast majority of that Judgment remains unsatisfied.

2.    G&G Investments, Inc. ("G&G") is a Pennsylvania corporation whose stock is 97% owned by Today's Express, Inc., and 3% owned by John J. Ghaznavi ("Ghaznavi"), an individual and Pennsylvania citizen.

3.    Ghaznavi and Patrick T. Connelly ("Connelly") (collectively referred to as "Respondents") are not defendants in the underlying collection action; rather, they served as officers and directors of G&G and various other Ghaznavi owned /related entities.

4.    Respondents served as officers and/or directors during various time periods of the following entities:  G&G, Executive Warehouse, Inc.; Today's Express, Inc.; G&G Investments Limited Partnership; Ghaznavi Enterprises, Inc.; Ghaznavi Investments, Inc.; and the John J. Ghaznavi Foundation, Inc.

5.     The corporate parent of G&G is Today's Express, Inc., which trades and does business under the name Delta Property Management.

6.     The disclosed subsidiaries of G&G from 1998 to the present are Glenshaw Glass Company; GGC Holdings, Inc.; Glenshaw Holdings, Inc.; Consumers Packaging, Inc.; GCA Aviation, Inc.; IMTEC Enterprises, Inc.; Hillsboro Glass Company; and Anchor Glass Company.

7.     The disclosed affiliates of G&G from 1998 to the present are Ghaznavi Canada, Inc.; U.S. Pallet Company; Ghaznavi Investments, Inc.; J&S Inc.; Break Bulk Distributors, Inc.; Federal Equipment Leasing, Inc.; National Equipment Leasing, Inc.; Delta Investments; Executive Group; Emsworth Group; N&G Partnership, N&G Partnership II; and Executive Mart Partnership.

8.     Ghaznavi was a shareholder, Chief Executive Officer, and Chairman of the Board of G&G. Additionally, he is the President of Today's Express, Inc.; Executive Warehouse, Inc.; Ghaznavi Investments, Inc.; the John J. Ghaznavi Foundation; and Ghaznavi Enterprises, Inc.

9.     Connelly is a Certified Public Accountant and he testified that his "principal background" is as a tax preparer. From approximately 2000 or 2001, through September of 2005, Connelly was employed by G&G. He was the Chief Financial Officer, Treasurer and Secretary of G&G from approximately 2002 until his formal resignation from those positions in October 2005. He was also the Chief Financial Officer, Treasurer and Secretary of Executive Warehouse, Inc.; Today's Express, Inc.; Ghaznavi Investments, Inc.; Ghaznavi Enterprises,

Inc.; and the John J. Ghaznavi Foundation from approximately 1998 until his resignation in October 2005. In his various corporate capacities, Connelly reported to Ghaznavi.

10. In October of 2005, Connelly came employed as Chief Financial Officer of Kratsa Properties and currently remains in that position. Krasta Properties is a separate entity unrelated to G&G, Ghaznavi, or any of the other entities involved or referenced in this litigation. From and since October 2005, Connelly has had no formal duties or responsibilities regarding G&G. However, he has appeared for various hearings and depositions.

## B.        Post-Judgment Discovery Disputes

11. On July 24, 2003, Buschmeier served her First Set of Interrogatories and Requests for Production In Aid of Execution of Judgment upon G&G. Such discovery requests directed that G&G provide information and documentation which related to G&G, its owners, parents, subsidiaries, and affiliates.

12. Ghaznavi testified that he directed Connelly to work with counsel in the assembly, review and production of responsive documents and answers. Ghaznavi had no personal involvement in gathering, reviewing, or producing any records or documents and he relied exclusively on Connelly and the lawyers to handle those matters.

13. On August 25, 2003, G&G provided answers and objections to Buschmeier's discovery requests, which included production of approximately 195 pages of documentation which related to G&G exclusively. The discovery responses were verified by Connelly in his capacity as Chief Financial Officer of G&G. The documents produced included the following:

    a.    The consolidated tax return pertaining to G&G, with information redacted as to G&G's owner, Executive Warehouse, Inc., and affiliated entities;

b.   The organization documents of G&G, including its bylaws, the certificate of organization, the certificate of incorporation, and copies of Board of Directors' minutes;

c.   Detailed, extensive information on G&G's payroll records, employees of the company, and copies of payroll tax returns;

d.   Copies of G&G's bank statements from PNC Bank and Dollar Bank for all accounts held by the corporation;

e.   Information on investment accounts maintained by Black Rock Provident and Dollar Bank;

f.   Information from G&G's depreciation records about assets owned, copies of stock certificates, and a proof of claim in the Consumers Packaging bankruptcy;

g.   Copies of financial statements for G&G for 2001 and 2002;

h.   A detailed transaction list of all cash transactions for G&G from December 2001 through August 14, 2003; and

i.   A copy of an insurance policy that benefitted G&G.

Through counsel at the time, G&G also objected to various discovery requests and to the scope of discovery as it related to its owners, parents, subsidiaries and/or affiliates.

14.   The Interrogatories and Requests for Production served by Buschmeier upon G&G requested information or documents from "affiliates" of G&G, a term that was not defined in the discovery requests. Connelly testified that he gauged the scope of the discovery responses provided by G&G based upon his training and experience with the Internal Revenue Code, specifically as the Code defines the term "affiliated group" and that none of the entities which Plaintiff listed as "affiliates" met the IRS Code definition.

15.   Connelly testified that apart from his own professional judgment as a CPA with extensive experience, he relied upon the advice of counsel at all times during discovery.

16.     Connelly testified that he had a "good faith belief" that the answers to interrogatories and documents produced by G&G were thorough, responsive, and complete to the best of his knowledge and understanding at the time.

17.     In February 2004, Buschmeier filed a Motion to Compel Discovery Responses and Production of Documents against G&G, which the Court granted by Order on July 15, 2004, but the limited the time period for production of records which was shortened from January 1, 1998, instead of 1988, to July 15, 2004.

18.     The Order of Court dated July 15, 2004, was clear, definite, and specific and required compliance in full by G&G in the manner set forth in Buschmeier's Motion to Compel on or before July 30, 2004.

19.     Both Ghaznavi and Connelly were aware of the July 15, 2004, Order of Court.

20.     Ghaznavi, again, instructed Connelly to work with counsel and assume responsibility for responding to the Court-ordered discovery and production.  In response to the Orders, Connelly and his staff accumulated sixty-three (63) boxes of  documents and records, which he believed to have been responsive to the Order for G&G (and the Order for the Subpoenaed Entities). Connelly had very limited assistance from counsel at this time as Buchanan Ingersoll had petitioned the Court to withdraw from representation due to lack of payment. Connelly testified that the responsive documents shipped to 4790 William Flinn Highway at the end of July 2004 pertained to G&G and the Subpoenaed Entities and included financial statement records, bank statements, canceled checks, accounts payable records, vendor information, accounts receivable, collection information, billing information, customers that

16

were billed and revenue collected from customers, financial statements, and annual financial statements for each of the companies. Connelly further testified that "several" boxes of G&G documents were included in the shipment, a fact that Buschmeier's counsel later confirmed upon inspection.

These boxes were transported to an off-site office location of G&G at 4790 William Flinn Highway in Allison Park, Pennsylvania. By letter of July 29, 2004, Attorney Gary A. Butler notified counsel for Buschmeier of the availability of the boxes of documents produced for inspection and their location at 4790 William Flinn Highway.

21.    The parties have stipulated that Buschmeier and her counsel did not actually review the documents stored at the G&G off-site location, 4790 William Flinn Highway, for approximately eighteen (18) months. Between July 29, 2004, and the actual inspection of the boxes of documents and records in January and February 2006, no additional documents were added to the boxes.

22.    On September 17, 2004, the main offices of G&G, located at 3140 William Flinn Highway, were destroyed by flood waters and sewage, which resulted from the vestiges of a storm known as "Hurricane Ivan." The furniture, file cabinets, computers, office equipment and virtually all records in the office were submerged in mud and sewage-infested waters and literally destroyed. The affidavits and photographs verified the extensive devastation of the offices and contents caused by the flood.

23.    At the time of the flood, "virtually all" of the G&G tax returns were in boxes on the floor in Connelly's office. Those tax returns and related financial records had not yet been moved "off site" with the other sixty-three (63) boxes of produced documents to 4790

William Flinn Highway. Connelly testified that he had retained these prior years tax returns of G&G in his office because he needed to refer to them in finalizing the 2003 G&G tax return, which had been completed and filed with the Internal Revenue Service on September 15, 2004, two days before the flood. Connelly testified that he had intended to have these tax documents united with the other sixty-three (63) boxes of documents at 4790 William Flinn Highway, but they were destroyed by the flood before he could do it. He testified that those records were, however, available for inspection from July 29, 2004 to September 16, 2004, in his G&G office at 3140 William Flinn Highway.

24. In the aftermath of the flood, the G&G offices at 3140 William Flinn Highway were abandoned and G&G operations were moved to other locations, including 4790 William Flinn Highway, where the sixty-three (63) boxes of discovery documents were still stored and available for inspection.

25. On September 30, 2004, Attorney Stanley J. Parker advised counsel for Buschmeier that all of the business records and files of G&G which were located at its main office at 3140 William Flinn Highway, including the subject of outstanding discovery, had been destroyed by the flood waters. However, the boxes assembled at 4790 William Flinn Highway were unaffected by the recent flood and were available for inspection. Nevertheless, counsel for Buschmeier did not review the documents until January / February 2006.

26. On November 1, 2004, Buschmeier filed an Emergency Motion for Omnibus Relief, in which counsel reported to the Court *inter alia* "As of today, the Judgement Creditor has produced nothing," which is an erroneous misrepresentation upon which this Court relied when issuing its October 7, 2005, Order. This representation was plainly inaccurate insofar as

the correspondence of July 29, 2004, advised counsel for Buschmeier of the sixty-three boxes of documents available for inspection, which was reconfirmed by Stanley J. Parker's correspondence of September 30, 2004, in which he advised of the flood destruction of records at G&G's offices at 3140 William Flinn Highway, while the boxes of documents at 4790 William Flinn Highway were unaffected by the flood and available for review.

27. At the request of Buschmeier, on March 28, 2005, the appearance of Frederick B. Goldsmith, Esquire, on behalf of Plaintiff was withdrawn by Order. Attorneys William Kealy and Robert Ray remained as counsel of record for Buschmeier. By this time, no one on behalf of Buschmeier had reviewed the boxes of produced documents stored at 4790 William Flinn Highway.

28. On October 7, 2005, at the request of counsel and in response to Buschmeier's Emergency Motion for Omnibus Relief, the Court entered an Order that, on or before October 27, 2005, the Respondents (Ghaznavi and Connelly) should show written cause: (i) why they should not be held personally liable for contempt; (ii) what measures had been taken to preserve and restore the documents; (iii) whether there existed hard and/or electronic copies of any of the documents or other materials which were the subject of the Order of Court dated July 15, 2004; (iv) whether it remained possible for any such materials to be recreated or otherwise reconstituted from any other sources; and (v) why Respondents should not be held personally liable for civil contempt for the notice sent to the retirees of Hillsboro Glass Company and Glenshaw Glass.

29. On October 25, 2005, Connelly, even though no longer employed by G&G, personally reviewed the sixty-three (63) boxes that had been assembled for inspection and

copying and "discovered" that most of G&G's documents which were responsive to the discovery requests had, in fact, been moved from 3140 William Flinn Highway to 4790 William Flinn Highway prior to the flood and, therefore, had not been destroyed by the flooding in September 2004.

30.     Connelly confirmed, however, that the minute books, the consolidated federal income tax returns of G&G, the state income tax returns, and Connelly's work papers which had been in his office at 3140 William Flinn Highway were destroyed by the flood.

31.     Connelly also investigated whether other responsive documents of G&G could be recreated or otherwise reconstituted from any other source(s).  Connelly and his former secretary, July Miles, identified copies of unaudited financial statements of G&G for 1998 and 2005.  These Balance Sheets were then produced to counsel for Buschmeier.  Ms. Miles also produced a 560-page report which detailed all financial transactions by account for G&G, for the period 1994 through 2004, and which partially detailed financial transactions for the year 2005.

32.     Connelly testified that he always took what he believed to be all reasonable steps to comply with the Court's Order(s) and he relied on the advice of counsel (to the extent counsel was available) in understanding that the records he and his staff compiled and produced at the time were complete.

33.     In January and February 2006, new counsel for Buschmeier reviewed the sixty-three boxes and other production of documents by G&G and subsequently advised G&G that many documents which counsel considered to be required as responsive were not included in the production.

34. On January 31, 2007, Buschmeier filed a Motion for Sanctions against G&G and Ghaznavi. G&G and Ghaznavi were ordered to file separate responses to said Motion. Ghaznavi responded in his individual and personal capacity, but G&G did not respond.

35. On February 21, 2007, the Court, at the direction of the Third Circuit Court of Appeals, granted Buchanan Ingersoll's petition to withdraw as counsel for G&G and G&G has been without counsel continuously since. Corporations are prohibited from acting in federal court without counsel.

36. On July 16, 2007, Buschmeier filed a Complaint in Contempt, in which she alleges that the continued refusal of G&G to produce documents is in direct violation of the Order of July 15, 2004, and that Respondents (Connelly and Ghaznavi) should be held in contempt consistent with their obligations as corporate officers and directors.

37. In her Complaint in Contempt, Buschmeier identified a series of documents that were allegedly responsive to the Order of July 15, 2004, and which had not yet been produced although G&G had "possession and/or control of, and/or could otherwise be obtained." These documents included;

    a. Tax returns of G&G, its owners, parents, subsidiaries and/or affiliates including the Subpoenaed Entities;

    b. Financial statements of the owners, parents, subsidiaries and/or affiliates of G&G including the Subpoenaed Entities;

    c. Computerized financial statements of G&G, its owners, parents, subsidiaries and/or affiliates including the Subpoenaed Entities;

    d. Bank accounts and financial holdings information of the owners, parents, subsidiaries and/or affiliates of G&G including the Subpoenaed Entities;

    e. Real estate holdings information of the owners, parents, subsidiaries and/or affiliates of G&G including the Subpoenaed Entities;

f.      Claims and demands for payment made by the owners, parents, subsidiaries and/or affiliates of G&G including the Subpoenaed Entities;

g.      Any responsive documents from the owner of G&G, John J. Ghaznavi;

h.      Any responsive documents from a number of the affiliates of G&G; and

i.      Any correspondence and/or Email of the owners, parents, subsidiaries and/or affiliates of G&G including the Subpoenaed Entities.

Many of these documents were ultimately produced at the contempt hearing through subpoenaed third parties and Plaintiff presumably has them.

## C.      Communication with Retirees of Hillsboro Glass

38.      Buschmeier also contends that Ghaznavi and Connelly should be held in contempt for their respective roles in drafting the August 6, 2004, notice that was sent to the retirees of Hillsboro Glass Co.

39.      Connelly testified that Ghaznavi and he were the officers and directors of Hillsboro Glass Co. in and prior to July 2004.

40.      By Order of Court, dated July 15, 2004, the Court ordered G&G to endorse reissued, new stock certificates of Hillsboro Glass Company (and four other companies in which G&G had ownership) and to physically deliver and deposit said certificates in escrow with the Clerk of the United States District Court on or before July 23, 2004.

41.      In compliance with said order, on July 20, 2004, Connelly, through counsel, delivered the endorsed stock certificates of Hillsboro Glass Co. to the Court Clerk for deposit in escrow.

42. Upon delivery of the endorsed stock certificates to the Court Clerk, Connelly and Ghaznavi believed that they no longer had any authority or responsibility with respect to Hillsboro Glass Co. because stock ownership had been transferred (presumably to Buschmeier) and, therefore, they each resigned as officers and directors of Hillsboro Glass Co. in July 2004. Connelly believed that with a change of ownership, that neither he nor Ghaznavi had the authority to spend any money from Hillsboro Glass Co.'s accounts for retiree benefits or any other purpose. Ultimately, the Hillsboro Glass Co. bank account balance was deposited in escrow with the District Court Clerk.

43. On August 6, 2004, Connelly, with advice of counsel, prepared and mailed a notice to the approximately 100 Hillsboro retirees, which stated that due to the Court-ordered "change of ownership," Hillsboro Glass Company "will no longer handle any medical or insurance coverage requirements for the Hillsboro retirees" and directed that any inquiries "regarding the continuation of your medical and life insurance programs" be directed to Buschmeier through her attorney, Frederick B. Goldsmith.

44. Ghaznavi testified that he had no involvement or knowledge of the decision to send the August 6, 2004, memo / notice to Hillsboro Glass Co. retirees and that he only became aware of it sometime after it was sent.

45. The notice mailed to the Hillsboro retirees was not signed by an individual, but rather was simply signed "Hillsboro Glass Co."

**Conclusions of Law**

1.      In order to establish a *prima facie* case for contempt, the moving party must establish by clear and convincing evidence that "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *John T. ex rel. Paul T. v. Delaware County Intermediate Unit,* 318 F.3d 545 (3d Cir. 2003).

2.      A corporate officer may be held in contempt for failing to direct and ensure that a corporate entity complies with an Order of Court directed to the corporate entity. *Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Electric Service Co.,* 340 F.3d 373, 379 (6th Cir. 2003).

3.      Once the moving party establishes a *prima facie* case for contempt, the burden switches to the defendant to assert "a present inability to comply with the order." *Id.* at 381.

4.      A defendant's good faith belief that its activities are proper is not a defense to contempt. *See Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994).

5.      A defendant may not be held in contempt as long as it took all reasonable steps to comply. *Harris v. City of Philadelphia,* 47 F.3d 1311, 1342 (3d Cir. 1995).

6.      Civil contempt sanctions are meant to serve two purposes: (i) to coerce the defendant into compliance with the Court's order; and (ii) to compensate for losses sustained by the disobedience. *Robin Woods, Inc.*, 28 F.3d at 400.

7.      The Court finds that Buschmeier has proven by clear and convincing evidence that a valid order existed which required the production of documents by G&G and that both Ghaznavi and Connelly had knowledge of the order. However, the Court also finds

24

that Buschmeier has failed to meet her burden to establish by clear and convincing evidence that Ghaznavi and Connelly did not take all reasonable steps to comply with the Order. Accordingly, neither Ghaznavi nor Connelly are found to be in civil contempt of Court.

8. The hearing record evidence established that Ghaznavi, although a 3% individual shareholder, Chief Executive Officer and Chairman of the Board of G&G, he was also a shareholder, officer, director or partner in numerous other businesses, both related and unrelated to G&G. In his executive capacities, Ghaznavi had oversight responsibility for many employees upon whom he relied along with the advice and services of accountants and attorneys. In 2004, Connelly, a Certified Public Accountant, was the Chief Financial Officer and a director of G&G, along with serving in similar capacities for numerous of the other Ghaznavi owned / related entities.

Ghaznavi was aware of the July 15, 2004 Order of Court and he directed his Chief Financial Officer, Connelly, to work with their attorneys to assemble, review and produce documents, records and answers responsive to said Order and/or subpoenas. Ghaznavi had no personal involvement in gathering, reviewing or producing any documents or records as he relied exclusively on professionals (Connelly and attorneys) which was reasonable under the circumstances. He executed IRS authorization forms for copies of tax returns when requested with directions to attorneys to produce them. He took reasonable steps to comply with the Order and there is not clear and convincing evidence of record which establishes otherwise.

9. The testimony and evidence adduced at the hearing establishes that, at Ghaznavi's direction, Connelly with his staff and attorneys worked diligently to comply with the Court Order of July 15, 2004. Connelly and his staff accumulated sixty-three (63) boxes of

documents and records beyond those documents previously produced with G&G's answers and objections to interrogatories in August 2003. Connelly worked with counsel (to the extent possible) to assemble the documents and he believed that they were responsive to the discovery requests and Order. By letter of July 29, 2004, counsel for Buschmeier was notified of the availability of these boxes of documents for inspection at 4790 William Flinn Highway. Further, the record reflects that in October 2005, after Connelly resigned from G&G as an officer and director, he personally reviewed the sixty-three boxes that had been assembled for inspection and discovered that most of G&G's documents which were responsive to the discovery requests had, in fact, been moved from 3140 William Flinn Highway to 4790 William Flinn Highway prior to the flood. Clearly, certain G&G tax returns and related documents were destroyed by the flood, but that was beyond the control of Connelly. It appears to the Court that Connelly, with advice of counsel, took all reasonable steps to comply with the Order of July 15, 2004, under the circumstances existing at the time.

10. The Court is constrained to note that when it issued its Order of October 7, 2005 (Ghaznavi and Connelly to show cause why they should not be held in contempt for, *inter alia*, failure to produce documents and the notice to Hillsboro retirees), it was under the distinct misimpression that "the Judgment Creditor ha[d] produced nothing." Indeed, no less than sixty-three (63) boxes of documents and records had been produced pursuant to the Order(s) with notices of their availability for inspection from and since July 29, 2004. Counsel for Buschmeier failed and neglected to review said documents and determine their responsive character and suitability until January and February 2006, long after Connelly had resigned and left G&G in September / October 2005. Had Buschmeier timely reviewed the documents

26

produced on July 29, 2004, and notified G&G and/or its attorneys of the alleged deficiencies, Connelly (as he testified) could have provided the various G&G tax records which were on the floor in his G&G office at 3140 William Flinn Highway prior to the destruction of those records by the flood of September 17, 2004. Failure to have produced same at that time would likely have resulted in another motion to compel rather than a contempt petition.

11.     Although the Court has previously found that the August 6, 2004, Notice to Hillsboro Glass retirees was "nothing less than unconscionable," the Court finds that neither Ghaznavi nor Connelly may be held in contempt for their actions in that regard as there was no specific Order of Court with which either Ghaznavi or Connelly failed to comply with respect to Hillsboro Glass Co. in general or the retirees notice specifically. Moreover, Ghaznavi was not involved in the decision to send the August 6, 2004, memo / notice to Hillsboro Glass Co. retirees and he actually knew nothing about it until sometime after it was sent. Further, the Court finds that it was not unreasonable under the circumstances at the time for Connelly to believe (as he testified) that ownership of Hillsboro Glass Co. was being transferred to Buschmeier when the stock share certificates were endorsed in blank and deposited with the Court in July 2004. There is no clear and convincing evidence to the contrary.

### Conclusion

For the reasons hereinabove discussed, the Complaint in Contempt filed by Buschmeier against John J. Ghaznavi and Patrick T. Connelly will be dismissed and the Motion for Sanctions filed by Buschmeier against John J. Ghaznavi will be denied.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PETRA BUSCHMEIER,                    )
                                     )
    Plaintiff / Judgment Creditor,   )
                                     )
        v.                       )    02: 03mc00506
                                     )
G&G INVESTMENTS, INC.,               )
                                     )
    Defendant / Judgment Debtor.     )

**ORDER OF COURT**

    **AND NOW**, this 14th day of January, 2009, in accordance with the foregoing

Memorandum Opinion, it is **ORDERED, ADJUDGED AND DECREED** that the

COMPLAINT IN CONTEMPT (Document No. 148) filed by Petra Buschmeier against John J.

Ghaznavi and Patrick T. Connelly is hereby **DISMISSED** and the MOTION FOR

SANCTIONS filed by Petra Buschmeier against John J. Ghaznavi (Document No. 131) is

**DENIED**.

                            BY THE COURT:


                            /s Terrence F. McVerry
                            United States District Court Judge

cc:     Arnd N. von Waldow, Esquire
        Reed Smith
        Email: avonwaldow@reedsmith.com

        Timothy J. Cornetti, Esquire
        Reed Smith
        Email: tcornetti@reedsmith.com

        Justin H. Werner, Esquire
        Reed Smith LLP
        Email: jwerner@reedsmith.com

        Robert O. Lampl, Esquire
        Email: rol@lampllaw.com

        William F. Ward, Esquire
        Ward & McGough
        Email: wfw@wardmcgough.com

        Hugh F. McGough, Esquire
        Ward McGough, LLC
        Email: hfm@wardmcgough.com